## EX PARTE SAMUEL WERNHAUSE.

### Kansas City Court of Appeals, December 1, 1919.

1. **EXTRADITION: Act of Congress: Flee and Fugitive: Avoid Prosecution: Intention.** The words "to flee from justice" and to be "a fugitive from justice," would ordinarily mean that one has run away for the purpose of escaping prosecution, but in the sense used in the Act of Congress providing for extradition, they cover the case of one who may have left the State where he committed a crime without any intention of avoiding prosecution.

2. **REQUISITION: Prima-facie Evidence: Conclusive: Evidence of Fact.** While a requisition from the Governor of a State upon the Governor of another State and the latter's warrant for apprehension of an accused is prima-facie evidence of the right to extradite, it is not conclusive and evidence may be heard to ascertain whether, in fact, the accused is a fugitive, and if this evidence is clear and uncontradicted, it is conclusive.

3. **SUFFERING PENALTY: Charge: Prosecution: Extradition** If an accused committing a crime in the demandant State has paid, or suffered the penalty assessed for such crime, there is no longer a charge against him, the prosecution is at an end and if he leaves the State he cannot be extradited.

4. **PAROLE: Extradition: Quere.** While if one who is convicted of a crime is on parole should violate such parole and escape into another State he may be extradited, yet if he has left the State in compliance with his parole and has not violated it it is a question not decided whether he may be brought back by extradition.

5. ———: **FIRST OFFENCE:** Restitution: Discharge: Extradition. By the law of Massachusetts one who commits his fiirst offence of larceny may be paroled, and if he makes restitution to the injured person will not be further prosecuted. W. pleaded guilty to larceny, he was paroled with the agreement, in court, between him, the injured party, the probation officer and the states attorney that if he would pay to such injured person $1000 he would be discharged. He made the payment, was discharged and voluntarily came to Missouri to reside. He was apprehended in the latter State on requisition from ·the Governor of Massachusetts and obtained a writ of *habeas corpus*, when it was held that he was not subject to extradition and discharged.

HABEAS CORPUS—ORIGINAL PROCEEDING.

PRISONER DISCHARGED.

*John T. Barker* for petitioner.

*Hunt C. Moore* for respondent.

ELLISON, P. J.—The relator herein was indicted in the Superior Court of Boston, Massachusetts, for the crime of larceny. He afterwards left that State and came to Kansas City, Missouri. Afterwards, on the 2nd day of June, 1919, the Governor of Massachusetts made requisition upon the Governor of Missouri that he cause relator to be apprehended and delivered to John F. Mitchell to be by him returned to the State of Massachusetts there to be dealt with according to law.

In compliance with ·such requisition the Governor of Missouri, on the 13th of June, 1919, issued his warrant and caused relator to be apprehended and placed in the custody of Mitchell and the latter was about to convey him to the State of Massachusetts, when he applied to this court for a writ of *habeas corpus,* in which application he stated that he was illegally restrained of his liberty and set up facts which it is claimed show that the Governors of Massachusetts and Missouri were without authority to take the action just recited. A writ was duly issued directing Mitchell to produce the body of relator before the court, that the

cause of his detention and restraint could be inquired into.

Mitchell produced relator in court with a return reciting why and by what authority he was detaining him, and that he was intending to take him to the State of Massachusetts. It is set up in this return that relator was indicted by a grand jury for the county of Suffolk Massachusetts of the 9th day of March, 1918, "upon the charge of having committed larceny from a certain conveyance, to-wit, the wagon of one James Cavenaugh on the 14th day of February, 1918, the same being a felony in the State of Massachusetts." That relator was arrested under a warrant issued on such indictment, that there were certain continuances, when finally on the 25th day of June, 1918, he pleaded guilty to said indictment. That afterwards, on the 19th of February, 1919, relator "was called to come in said court and answer further to said indictment," but that he "did not appear, but made default." This is followed by an allegation that application was made for a requisition on the Governor of Missouri as already stated.

Relator having asked that a commissioner be named to take testimony in the cause we appointed James T. Aylward, Esq., of the Kansas City bar. Mr. Aylward heard the evidence offered and made due return thereof from which it appears that relator was indicted for larceny and that he pleaded guilty, and that this was his first offense. But the following was also shown and was *uncontradicted*. There is a statute in Massachusetts providing a probation system in that State, applicable to persons prosecuted for larceny. Probation officers with prescribed duties are provided for. By the laws of that State, 1902, page 1833, chapter 217, section 84, each probation officer is required to examine into the nature of every criminal case and may recommend that any one convicted be placed upon probation, and that such person may be released on probation. It is also provided in that statute page 1756, section

52, that if upon first conviction it is shown that the act of stealing was a simple larceny and the convicted party makes restitution to the person injured to the full value of the property stolen, he shall not be imprisoned in the State prison.

It was further shown that by the Laws of Massachusetts of 1907, chapter 335, page 289, if a person is placed on probation upon condition that he make restitution to the person injured, and payment is not made at once, the court may order that it be paid to the probation officer who shall give receipts and keep a record and shall pay the money to the person injured.

It appears from the testimony that the probation officer, the state's attorney, the relator, and the injured party agreed that relator should make restitution in the sum of $1000. That he paid $550 of that sum to such officer on the 25th of June, 1918, and took his receipt. Such payment was made in court room while court was in session. That he was then on bond or bail, but that he was allowed to go without bond, with the understanding between the probation officer, the State's attorney, the injured party and relator that upon payment of the balance of $450 he would be finally released from all further prosecution. That on the 4th of December following, he came into court paid the proper probation officer $450, the balance due, and took his receipt as in the instance of the first payment. He was then released.

Relator had the receipts, above referred to, in his possession and they were filed here as exhibits. Their genuinenness has not been disputed. And though the application for this writ was made more than three months ago in which, substantially, the facts above recited were set out, no denial has ever been made. We therefore accept as true that relator was released and advised that he was at liberty to go his way without further claim or restraint.

The Constitution of the United States (clause 2, section 2 of article 4) provides that every person

charged with a felony or other crime "who shall flee from justice and be found in another State, shall on demand of the executive authority of the State from which he fled," "be delivered," etc. The federal statute (Sec. 5278, R. S.) provides for the delivery of "any person as a fugitive from justice." It will be noticed that in the Constitution the expression is any person "who shall *flee* from justice," while in the statute it is "any person as a *fugitive* from justice." But the meaning is the same. Either to flee or be a fugitive would, ordinarily, mean that the accused had run away to avoid prosecution. But it seems not to have been interpreted that way. So that though one had no thought of an escape or of avoiding a prosecution, if he be found in a State other than the one in which he committed the offense charged, he may be extradited under either the wording of the statute, or the Constitution. [Roberts v. Reilly, 116 U. S. 80; In the Matter of Voorhees, 32 N. J. L. 141.] So, therefore, the mere fact that the relator came "voluntarily" to this State to reside would not affect the question whether he is a fugitive from, or has fled from, justice in the other State. (McNichols v. Pease, 207 U. S. 100, 108), and we proceed to inquire from other considérations whether he is subject to extradition.

While the requisition from the demandant Governor and compliance therewith by the Governor of the other State, is prima-facie sufficient to justify extradition, they are not conclusive, and, on *habeas corpus* we may take testimony to determine the substantive fact whether the accused is a fugitive from justice. And if the testimony showing him not to be such fugitive is uncontradicted, it is controlling. [Hyatt v. Corkran, 188 U. S. 691, 711.] In McNichols v. Pease, 207 U. S. 100, 109, the following, among other matters are said to be settled: "A proceeding by *habeas corpus* in a court of competent jurisdiction is appropriate for determining whether the accused is subject, in virtue of the warrant of arrest, to be taken as a fugitive from the justice of

the State in which he is found, to the State whose laws he is charged with violating.

"One arrested and held as a fugitive from justice is entitled, of right, upon *habeas corpus*, to question the lawfulness of his arrest and imprisonment, showing by competent evidence, as a ground for his release, that he was not, within the meaning of the Constitution and laws of the United States, a fugitive from the justice of the demanding State, and thereby overcoming the presumption to the contrary arising from the face of an extradition warrant."

From the testimony it clearly appears that the relator was not amenable to further punishment. It is manifest that such was the understanding of the probation officer and the State, through its attorney. We can give no other interpretation to the evidence than that the prosecution for the offense had come to an end by the proceeding we have recited, if a person commits an offense in the demandant State and is afterwards apprehended in another State, no one would say that he should be extradited if it appeared he had paid the penalty assessed for such offense by suffering the punishment therefor; yet that is, in effect, what relator has done in this instance.

We have not overlooked the matter of parole of a prisoner pending the execution of his sentence and readily concede that if one charged and convicted of a crime is paroled and he violates such parol by escape into another State, he may be extradited. [Drinkall v. Spiegel, 68 Conn. 441; Re Ridley, 106 Pacific, 549 (Oklahoma).] But we have not such facts. In the first of these cases, the prisoner was convicted in New York and then paroled and directed to go to the State of Michigan where work had been engaged for him. But instead of going to Michigan he violated his parole by going to Connecticut. The court says that he used his parole to practice a fraud and thereby escape his imprisonment in New York. But the court added (p. 449), that "If he had gone to Michigan and it had

been sought to secure his return from that State by a requisition upon the executive, a different question would have been presented.'' At page 446 of the report it is said that, ''A man is still a fugitive from justice so long as he has departed leaving demands unsatisfied.'' This is but another way of saying that if, before departing, he had satisfied the demands of the law he could not be returned.

In our consideration of this application we have not found a case fully in point, but counsel has cited us to Ex Parte Kuhns, 36 Nevada, 487, where it was held that a husband not in arrears in payments for support of his wife in Pennsylvania at the time he leaves that State is not subject to extradition as a fugitive from justice for failure to support in case he subsequently becomes delinquent.

The prisoner should be discharged.   All concur.